**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3824-18T3

SYLVIA HAGANS,

     Plaintiff-Appellant,

v.

E. ALAN NICKERSON, ESQ.,

     Defendant,

and

GEORGE L. FARMER, ESQ.,

     Defendant-Respondent.

_____

          Telephonically argued June 15, 2020 –
          Decided July 31, 2020

          Before Judges Fisher and Fasciale.

          On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0355-17.

          Mark J. Molz argued the cause for appellant.

          George Louis Farmer argued the cause for respondent.

PER CURIAM

Plaintiff Sylvia Hagans appeals from an order that granted summary judgment, dismissing her legal malpractice action against defendant George L. Farmer, Esq. We find no merit in her arguments and affirm.

The claim has its genesis in an allegation made in 2004 by ARC of Camden County to the Division of Developmental Disabilities (DDD) that plaintiff, who was licensed by the DDD to operate a community care residence (CCR), had mistreated a developmentally disabled person in her care. Plaintiff's license was revoked, but she administratively appealed and, at the conclusion of an administrative hearing, it was determined that the DDD failed to prove plaintiff had mistreated the patient. Plaintiff's license was restored in 2007.

Plaintiff retained defendant Nickerson, who in 2010 filed a civil action on plaintiff's behalf against ARC, claiming ARC had tortiously interfered with her contractual relationship with the DDD. Well into this litigation, apparently after discovery had closed, plaintiff became disgruntled with Nickerson's services and discussed the matter with Farmer. Plaintiff and Farmer agreed he would review the file for an agreed upon $2500 fee, and that he would then provide her with advice as to the way or ways in which she might proceed.

2

After his review of the file, Farmer advised plaintiff that the situation seemed "very difficult" but that if she still wanted to proceed, he would provide her with strategy options and a fee schedule dependent on whether he, on her behalf, proceeded with the case "as is" or as if "start[ed] from scratch." As Farmer explained at his deposition, the former meant that he would not attempt to reopen discovery or take any additional discovery but proceed forward with the case as it existed, while the latter meant he would attempt to take whatever steps, including his pursuit of additional discovery and an amendment of the complaint, that might improve her chances for success. In informing plaintiff of her options, Farmer discussed and wrote to her about the various steps he would take if she chose not to proceed with the case "as is." They also communicated about the fees plaintiff would be expected to pay depending on which option she chose to pursue; he quoted $30,000 as a flat fee if plaintiff proceeded "as is," and that the "start from scratch" approach would be more costly.

Plaintiff advised Farmer she could not afford the $30,000 fee, so Farmer proposed a risk-sharing, hybrid fee arrangement for the "as is" option of which only a $20,000 fee was guaranteed – regardless of the outcome – but that, if plaintiff was successful, the fee would be the greater of a $30,000 flat fee, the

3

fee generated based on the hours expended (at a $250 per hour rate), one-third of the net recovery, or any fee awarded by the court.

Plaintiff chose the "as is" approach and the hybrid fee agreement. Plaintiff and Farmer also agreed to allow the $20,000 guaranteed fee to be paid over time. Of relevance, the written retainer agreement memorialized that the parties had "discussed various alternative game plans in moving forward" and that plaintiff "decided to pursue" that which would have Farmer "substitute in as counsel for Mr. Nickerson, and to pursue the claim [to] a trial as soon as possible."

Farmer thereafter substituted as counsel for plaintiff and prepared a detailed arbitration statement. The matter proceeded to arbitration. Plaintiff's position was not sustained in arbitration, so Farmer filed on her behalf a demand for a trial de novo.

ARC then moved to reopen discovery so it could depose plaintiff. This prompted Farmer to ask plaintiff whether she might want to alter the "as is" approach, since if ARC was permitted to reopen discovery, plaintiff would likely be permitted to pursue any discovery not taken when Nickerson was her counsel. Plaintiff decided for financial reasons that the better course would be to oppose ARC's motion to reopen discovery rather than file a similar motion on her own behalf.

The trial judge granted ARC's motion to reopen discovery, plaintiff's deposition was taken, and ARC then moved for summary judgment, which plaintiff opposed. The trial judge granted summary judgment. After this, plaintiff stopped making her monthly payments on the fee due Farmer. When Farmer sought payment, he advised plaintiff of her right to pursue fee arbitration. Plaintiff chose arbitration, and an arbitrator ruled Farmer's fee was reasonable and enforceable.

Plaintiff then filed this action, alleging that both Nickerson and Farmer were negligent in their handling of her case against ARC. With regard to her claims against Farmer, plaintiff alleged that, prior to or in response to the summary judgment motion, Farmer failed to seek to amend the complaint to include additional allegations of allegedly false complaints made by ARC about plaintiff to the DDD; in other words, plaintiff complained that Farmer failed to take a step that plaintiff and Farmer had discussed prior to Farmer's entry into the case and as to which plaintiff expressly agreed he should not take due to the costs involved.

After discovery, which included the deposition of Farmer and plaintiff's service of an expert report, both Farmer and Nickerson moved for summary judgment. Plaintiff's opposition seems to be limited to what was presented in

her expert's report. That report relies on the retainer agreements, the written communications between plaintiff and Farmer, and the expert's view of Farmer's obligations. The judge granted both motions. Plaintiff appeals only the order granting summary judgment in favor of Farmer,[1] arguing the judge erred in determining that plaintiff had failed to present a prima facie case of legal malpractice or a breach of a fiduciary duty.

In granting summary judgment, Judge Daniel A. Bernardin recognized that plaintiff espoused multiple theories. For example, other than the theory pleaded in the complaint that Farmer should have moved to amend the complaint against ARC by expanding the allegedly tortious steps taken by ARC, the judge noted that plaintiff also claimed – without having sought to amend her complaint – that Farmer was negligent in not advising her that her claim against ARC was without merit.[2] We agree that Farmer's advice that the case was "very difficult" was sufficient to convey to plaintiff the uphill battle she faced. The judge also observed that plaintiff accused Farmer of some type of "bait and switch" in the

---

[1] Although the record on appeal contains little about the claim against Nickerson, plaintiff acknowledges in her merits brief that she did not oppose Nickerson's summary judgment motion and does not appeal that disposition.

[2] The judge described this claim as asserting that Farmer "took money from plaintiff knowing [her claim] was not [] viable" or "there was no chance of success."

A-3824-18T3

providing to plaintiff of options for proceeding once Nickerson was replaced. But there was no evidence of such a tactic. Indeed, Farmer provided plaintiff with various options as to how to proceed and plaintiff chose the option she desired.

In addition, plaintiff seemed to have argued in opposition to summary judgment that Farmer's obligation to zealously represent plaintiff mandated that he seek to reopen discovery and amend the complaint with other claims against ARC regardless of their express agreement to the contrary. The judge correctly recognized, as RPC 1.2(c) declares, that an attorney and client may "limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." We agree that the retainer agreement the parties reached was both reasonable and quite informative of that to which plaintiff consented. And, to the extent plaintiff's argument was simply that Farmer's fee was unreasonable, that argument was rejected in fee arbitration and not cognizable either in the trial court or here.

In short, we find insufficient merit in plaintiff's arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), and we affirm substantially for the reasons set forth in Judge Bernardin's thorough and well-reasoned oral decision.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

8